# IN THE COURT OF APPEALS OF IOWA

No. 17-0975
Filed May 16, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**BRANDON T. GANAWAY,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.

Brandon Ganaway appeals, claiming the district court abused its discretion in sentencing him. **AFFIRMED AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Zachary C. Miller, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., Mullins, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**MAHAN, Senior Judge.**

Brandon Ganaway appeals, claiming the district court abused its discretion in sentencing him. We discern no abuse of discretion in the district court's sentencing decision, and we affirm the court's order. We remand the case to the district court so that it may issue a nunc pro tunc order to correct the clerical error in the written order with regard to the imposition of fines.

## I.       *Background Facts and Proceedings*

Brandon Ganaway pled guilty to possession of a controlled substance (methamphetamine) and delivery of a controlled substance (methamphetamine). *See* Iowa Code § 124.401(1)(c)(6) (2016). The district court entered an order allowing Ganaway, who had a criminal record dating back to 1994, to attend inpatient substance abuse treatment at the Salvation Army pending sentencing. Ganaway was terminated from the Salvation Army after five days for violation of various rules, which prompted his re-arrest.

The department of corrections' presentence investigation report (PSI) recommended Ganaway be sentenced to prison. The PSI preparer opined Ganaway "has shown he is not willing to become a law-abiding citizen and/or comply with the current conditions of supervision." At the sentencing hearing, the prosecutor "acknowledge[d] that we're dealing with a defendant [who] has a criminal history that is colored in terms of criminal offenses and opportunities and dispositions." The prosecutor observed Ganaway "struggled following rules, being where he was supposed to be, being on time, being up front with his probation officer," and if he "cannot do that, that tells the State that he will not be successful on probation and leaves the State with no other choice [than] to recommend

incarceration." Ganaway addressed the court at length with regard to his sentence, stating in part, "I didn't do anything in [the Salvation Army] . . . to be kicked out of there like that. . . . I was kicked out of [t]here for a reason that I feel was really minute." He requested "an opportunity to at least get some help, to go to treatment."

The district court sentenced Ganaway to an indeterminate term not to exceed ten years on each count, the terms to run consecutively, and imposed the one-third mandatory minimum for each count. The court stated its reasons for the sentence as follows:

> For the past [twenty-three] years you have done nothing productive. You were in trouble as a youth. You had problems with the law in '96, '98, 2001, 2000, 2004, [2005], [2007], [2010], [2011], [2012], on and on and on. The record reflects the Court has been extremely lenient with you, repeatedly giving you probations, which you repeatedly failed. Even when you were sent to prison, you were given parole, and you failed at that. This court took a chance on you. I listened to what your lawyer said. He told me you were absolutely sincere.
> . . . .
> . . . . People, in my experience, who really want treatment—and I've been doing this for [twenty-two] years, and I've presided over the drug court for two years, and I have placed people in Bridges again and again and again, and I've removed them from Bridges numerous times. People who really want treatment are desperate. Desperate. They will do anything. They won't blame others. They won't throw other people over the bus—under the bus for their own failures. You were trusted. You were trusted, and you failed. And now you come in here this morning and you claim it's someone else's fault. That's—that is a—in my view, that is a clear inability on your part to understand what's going on here.
> Your lawyer tells me you left the facility because it was faith-based and that just doesn't fit with you. You didn't say anything about that. The PSI didn't say anything about that. There's nothing in the PSI that talks about you didn't gain any traction at Salvation Army because someone unfairly treated you about that.
> I should think that a drowning man would grab onto anything and cling to it, and that's what Salvation Army was for you. That was your last clear chance, and to say I'm disappointed is a gross

understatement. I took a chance on you. I trusted you, and I listened to what your lawyer said, and you blew it. You wasted it. That was your last-break opportunity at this stage of your life, and you wasted it. You just wasted it. And I can't tell you how disappointed I am.

I don't give trust easily, especially to someone who's got a criminal record that goes back [twenty-three] years, has failed at all their probations, has failed at their paroles, and I still trusted you. And you couldn't handle it. Now you want more trust, when there is nothing here to show that you can be trusted. That—I understand what you want, but what you say is just hot air. A man's measured by what they do, not by what they say. Change comes from different actions, not different words.

And this is a sad situation, Mr. Ganaway. You are wasting your life. You are wasting your life. You've already wasted more than two decades, and now you're looking at two more decades wasted, letting other people take care of your children because you're not responsible enough to do that. Let the taxpayers care for your children, because you don't. Let the mothers care for the children, because you won't.

A drowning man will grab at anything. You're not at the bottom yet, Mr. Ganaway. Successful substance abuse treatment begins with the addict conceding they cannot do it on their own, that they're an abject failure, and pleading for help and willing to do anything for it. You're not there yet. You're—you have not yet hit the bottom. You're still blaming others.

. . . .

You're adjudged guilty of possession of a controlled substance with intent to deliver methamphetamine and sentenced to serve not more than ten years in prison. You're adjudged guilty of delivery of a controlled substance and sentenced to serve a term of not more than ten years in prison.

These sentences will run consecutively. . . .

The following colloquy then took place:

DEFENSE COUNSEL: Your Honor, Mr. Ganaway has asked me to ask the Court to reconsider these sentences—
COURT: I will not reconsider.
DEFENSE COUNSEL: —to run concurrent. That's all.
COURT: They will not be reconsidered. I have made my point. I gave you your chance. I gave you a chance that, frankly, you didn't deserve, and you still wasted it.
There is no mandatory minimum on these sentences, is there?
STATE: There's a mandatory one-third at this time, Your Honor.
COURT: On both?

STATE: Yes, sir.

COURT: Well, then mandatory minimums are imposed.

Ganaway appeals, raising several challenges to his sentence.

## II.    *Standard of Review*

We review a district court's sentencing decision either for abuse of discretion or for a defect in sentencing procedure, such as the district court considering impermissible sentencing factors.  *See State v. Formaro*, 638 N.W.2d 720, 724-25 (Iowa 2002).  Where improper factors are considered, a sentence must be vacated and the case remanded for resentencing.  *See State v. Sinclair*, 582 N.W.2d 762, 765 (Iowa 1998).

## III.    *Sentencing Challenges*

Ganaway contends the court abused its discretion by considering "improper factors"; failing to consider "the entire record when determining the sentence, including a letter [he] wrote directly to the judge prior to sentencing"; failing to "understand the mandatory minimum portion of the sentence"; and failing to "provide adequate reasons . . . on whether [he] should serve consecutive or concurrent sentences."

### A.    *Improper Factors*

Contrary to Ganaway's assertion, the district court did not consider an improper factor by stating Ganaway does not support his children.  As Ganaway acknowledges, the PSI contained information that five of his children lived with their mothers, two of his children were in foster care, and he owed $80,000 in child support payments.  The defendant's acceptance of responsibility is a factor for the court to consider in reaching a sentencing determination.  *See, e.g.*, Iowa Code

§§ 901.5 (instructing the court to examine "all pertinent information," including the PSI and victim impact statements, prior to pronouncing sentence), 902.1(2)(b)(2)(g) ("In determining which sentence to impose, the court shall consider all circumstances including but not limited to . . . [t]he defendant's acceptance of responsibility."). In any event, it is clear the district court did not reach its sentencing decision based on the support Ganaway does not provide for his children; the court provided many reasons for the sentence it reached,[1] and the court only mentioned Ganaway's children in evaluating his request for treatment. *Cf. State v. Weaver*, No. 15-0040, 2015 WL 6509024, at *2 (Iowa Ct. App. Oct. 28, 2015) (rejecting contention that the court's mention of the defendant's relationship with his children "amounted to the consideration of an impermissible factor in making a sentencing decision").

### B. Letter to the Court

Prior to sentencing, Ganaway wrote a letter to the court, which included an apology and contained an "accurate account" of the reasons he was discharged from the Salvation Army. Ganaway contends on appeal, "It appears . . . the court did not review this letter prior to sentencing, despite the fact that the letter was in the record, contained relevant information to Ganaway's case and proper sentence, and was actually addressed to the sentencing judge." But as the State points out, all the information in the letter was in the record by way of the PSI and

---

[1] The court also gave its reasons in a written sentencing order. Specifically, the court checked the following boxes on the sentencing form: "Defendant's age"; "Defendant's prior record of convictions and deferments of judgment, if any"; "Defendant's employment circumstances"; "Defendant's family circumstances"; "Defendant's mental health and substance abuse history and treatment options available in the community and the correctional systems"; "the nature of the offense committed"; and "statutory sentencing requirements."

Ganaway's allocution. We also observe the letter includes a note saying "Clerk – Please file. Judge has reviewed," as well as a file stamp. The court's explanation of Ganaway's sentence indicates it considered the information in the letter and the record as a whole. *Cf. State v. Knight*, 701 N.W.2d 83, 87 (Iowa 2005) ("A defendant's acceptance of responsibility for the offense, and a sincere demonstration of remorse, are proper considerations in sentencing. They constitute important steps toward rehabilitation." (citation omitted)).

### C. Mandatory Minimum

Ganaway claims the court's "statements during the hearing" indicate the court "was unaware the sentences carried mandatory minimums" or that it "had the discretion to waive a portion of the mandatory minimum." According to Ganaway, the court "add[ed] the mandatory minimum[s] as an afterthought." We disagree. On the sentencing form, the court checked the boxes stating it found "mitigating circumstances do not exist, and Defendant is required to serve a mandatory one-third of the sentence prior to being eligible for parole on Count(s) I and II" and "no further reduction of the mandatory minimum contained within Iowa Code section 124.413(1) is warranted." The court's statement of reasons was sufficient. *See State v. Thompson*, 856 N.W.2d 915, 921 (Iowa 2014) ("In this age of word processing, judges can use forms, such as the one available in this case, to check the boxes indicating the reasons why a judge is imposing a certain sentence.").

### D. Consecutive Sentences

Ganaway contends the court failed to "provide adequate reasons . . . on whether [he] should serve consecutive or concurrent sentences." Aside from the court's explanation at the hearing, the court explained in the sentencing order, "The

sentences are consecutive based upon . . . the separate and serious nature of the offenses." We conclude the district court did not abuse its discretion in imposing consecutive sentences. *See State v. Taylor*, 596 N.W.2d 55, 57 (Iowa 1999) ("The decision to impose consecutive sentences was discretionary.").

## IV. *Imposition of Fines*

Ganaway also challenges the provision of the written sentencing order requiring him to pay a fine and surcharge on each count. At the sentencing hearing, the court indicated the fines would be suspended. Although nothing in the record suggests the court intended to enter a sentence contrary to its oral pronouncement, the court failed to suspend the fines and applicable surcharges in its written order. The State concedes the discrepancy was the result of clerical error.

"[W]hen a judgment entry incorrectly differs from the oral rendition of the judgment merely as a result of clerical error, the trial court holds the inherent power to correct the judgment entry so that it will reflect the actual pronouncement of the court." *State v. Hess*, 533 N.W.2d 525, 527 (Iowa 1995). In such instances, "the oral pronouncement of sentence controls." *Id.* at 528. Because the record demonstrates the discrepancy was the result of a clerical error, we remand the case to the district court so that it may issue a nunc pro tunc order to correct the clerical error in the written order. *See id.* at 529. We affirm in all other respects.

**AFFIRMED AND REMANDED.**